BRADSHAW v. WARNER ET AL.

CONTRACT.—Sale.—Personal Property.—Conditional Sale of.—Judicial Sale of.—Title Acquired by.—Replevin.—The owner of an article of personal property sold and delivered it to the purchaser thereof, at an agreed price payable at a certain time, upon the express condition and agreement that the title thereto should remain wholly in such vendor until the full payment of said price, but it never was paid. An officer holding an execution in favor of a third person against such vendee, to satisfy the writ, levied upon and sold such property to a third person, who knew nothing of the vendor's title thereto, and whom said vendee had informed that it was his own property. The vendor replevied the property from the purchaser at said judicial sale.

Held, that the title to such property remained in the plaintiff, and that the defendant acquired no rights by his purchase at such judicial sale. (King v. Wilkins, 11 Ind. 347, doubted.)

From the Carroll Circuit Court.

J. Applegate, for appellant.

J. L. McMaster and A. Boice, for appellees.

WORDEN, C. J.—This was an action of replevin by the appellees against the appellant, for a safe. Trial by court, special finding of facts, conclusions of law thereon stated, and judgment for plaintiffs.

The defendant appeals, assigning the single error that the court erred in the conclusions of law.

The following are the facts found by the court, viz.:

"In the spring of 1873, an agent of the plaintiffs called on A. G. Wolf & Co., merchants, at their place of business in Delphi, Indiana. The result of that call was an order to the plaintiffs for a safe. This order is in writing, and is in the following words and figures, viz.:

"'DELPHI, INDIANA, May 15th, 1873.

"'Messrs. Warner & Cary: Please send us, as soon as convenient, one Diebold & Kienzle's, No. 6, fire S. D. proof safe; size as per illustrated catalogue; ship via Cincinnati, freight, to Delphi, Indiana, from Canton, Ohio. Terms, on board cars in Canton, Ohio, with note, one hundred and sixty-five dollars, one-fourth in four, one-fourth in eight,

one-fourth in twelve, one-fourth in sixteen months from date of invoice, without interest.

"'Remarks: Name on outside of safe, "A. G. W;" on inside, "Drawer."

"'If note is not forwarded to you at the expiration of twenty-five days from date of invoice, the account shall become due at the expiration of thirty days from date of bill, and agree to accept and pay draft of amount mentioned below, and are not to countermand this order. It is agreed that the title to said safe not pass until notes are paid, or safe paid for in cash, but shall remain your property until that time. Net price, one hundred and sixty-five dollars.'     ·     Yours, truly,

"'A. G. WOLF & Co.'

"This order or letter was signed, executed and delivered to the plaintiffs' agent by said A. G. Wolf & Co., and by him forwarded, in due course of mail, to the plaintiffs in Chicago, Illinois, where it was received on the 17th day of May, 1873.

"Some time in the summer of 1873, the plaintiffs duly executed their part of said contract, and the safe ordered was received and accepted by said A. G. Wolf & Co., at Delphi, Indiana.

"'That before the shipment of the safe, the plaintiffs made inquiries about the financial standing of A. G. Wolf & Co.

"After the reception of the safe by A. G. Wolf & Co., they placed the same in, and used the same at, their place of business in Delphi, Indiana, until in May, 1874.

"That said A. G. Wolf & Co. accepted four drafts, drawn on them by the plaintiffs, for forty-one dollars and twenty-five cents each, payable in four, eight, twelve and sixteen months, respectively, all bearing date July 31st, 1873. That neither of said drafts was ever paid. That said A. G. Wolf & Co. never paid plaintiffs in any way for said safe.

"That at the time the first acceptance became due, the

said A. G. Wolf & Co. were insolvent, and have so remained ever since.

"That on May 15th, 1874, a constable of Deer Creek township, Carroll county, Indiana, levied an execution, then in his hands, against said A. G. Wolf & Co., and in favor of creditors other than the plaintiffs, upon said safe, to satisfy said execution.

"That at and before the time of the levy, the said safe being in the possession of A. G. Wolf & Co., A. G. Wolf told the said constable that said safe was his [their] absolute property.

"That the safe was advertised by the said constable for sale to satisfy said execution, and at the sale the defendant, Bradshaw, believing the safe to belong to said A. G. Wolf & Co., and being ignorant of the plaintiffs' claim, bid upon said safe, and it was struck off to him by the constable, at and for the price of eighty dollars, which sum he then and there paid to the constable and took possession of said safe.

"That before the commencement of this suit, plaintiffs demanded of defendant a return of the safe, which defendant refused and still refuses to do. That said safe was of the value of eighty dollars at the time of the demand."

The court concluded, as matter of law arising upon the facts, that the plaintiffs were entitled to recover the safe, and rendered judgment accordingly.

The main ground assumed by the appellant is, that as he was a purchaser without any notice of the appellees' claim to the safe, and that as A. G. Wolf & Co. had the indicia of ownership, his rights should be held paramount to those of the plaintiffs.

But the title to the property never passed to A. G. Wolf & Co. at all. By the express terms of the contract, the title to the safe was not to pass to Wolf & Co. until it was paid for, but, on the contrary, it was to remain in the plaintiffs until that was done.

As the title was not in Wolf & Co. at the time of the

constable's sale, no title was acquired by the appellant by his purchase, unless there is something in the case that takes it out of the ordinary rule that the purchaser of personal property acquires no better right to it than his vendor had. · We see nothing in the case that takes it out of the ordinary rule. As a general rule, the purchaser of personal property on execution acquires no better right than the execution-defendant had. The appellant evidently acquired no better title than if he had in good faith purchased the safe from Wolf & Co. The statement of Wolf to the constable, that the safe was theirs, can not affect the plaintiffs' right to it. On principle and authority, we think the plaintiffs were entitled to the safe, and, therefore, that the court did not err in its conclusions.

In the case of *King* v. *Wilkins*, 11 Ind. 347, it was said, in speaking of a conditional sale like the present, "Against creditors whose demands originated while the property was in possession of the vendee, so that it might be fairly presumed that a false credit was given him, the vendor can not, in our opinion, set up title."

We doubt the correctness of the statement, as applied to a case where the title has never passed from the supposed vendor. But if it were a correct statement of the law, it would have no application to the case here, for here it was not found that the debt, on which the judgment was rendered, and for which the safe was sold by the constable, was contracted while the safe was in the possession of Wolf & Co.

A later case in this court, that of *Thomas* v. *Winters*, 12 Ind. 322, is in point here. There, Thomas & Co. sold two steers to Johnson, to be paid for in staves, and a written agreement, signed by Johnson, contained this provision: "And the said Thomases hold the said steers as their property until the delivery of said staves."

Johnson took possession of the steers and sold them, never delivering the staves. In an action of replevin by the Thomases, against the purchaser, for the steers, it was

held that the title had not passed from Thomas & Co., and, therefore, that the purchaser from Johnson acquired no title. The case of *Dunbar* v. *Rawles*, 28 Ind. 225, is also in point.

We content ourselves with citing two authorities from other states. In *Ballard* v. *Burgett*, 40 N. Y. 314, the plaintiff sold oxen to one France for one hundred and eighty dollars, with the agreement that the oxen were to remain the property of the plaintiff until paid for. France, never having paid for the oxen, sold and delivered them to the defendant, who had no notice of the plaintiff's claim. It was held, upon an extensive examination of the authorities, that the title to the property had not passed from the plaintiffs, that the purchaser from France acquired no title, and that the plaintiff was entitled to recover the oxen.

The case of *Hirschorn* v. *Canney*, 98 Mass. 149, was replevin for seventy thousand cigars. The plaintiffs, of New York, sold the cigars to one Eaton, of Boston, " on the condition that if his references should be satisfactory, they would ship the cigars to him, and he should send his notes in payment." The references being satisfactory, the plaintiffs shipped him the cigars, and sent him by mail a bill of lading, and a letter as follows, viz.:

" We have the pleasure to inclose bill of lading of ten cases cigars. Please remit us your notes for the amount of bill."

Eaton received the cigars, and, soon afterwards, sold them in the usual course of business to the defendants, but he never sent his notes to the plaintiffs in payment. It was held, that the plaintiffs were entitled to recover the cigars, that the sale to Eaton was on condition that he should send them his notes in payment, and that, as he had not performed the condition, the title did not vest in him, and that the defendants acquired no title by their purchase from Eaton.

The judgment below is affirmed, with costs.